UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| DANIEL LEE SOSBE, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) Case No.: 1:16-cv-00698-DML-JMS |
| NANCY A. BERRYHILL,[1] Acting Commissioner of the Social Security, Administration, | ) |
| Defendant. | ) |

## Decision on Complaint for Judicial Review

Plaintiff Daniel Lee Sosbe applied in May 2012 for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, alleging that he has been disabled since March 20, 2012. Acting for the Commissioner of the Social Security Administration following a hearing held May 9, 2014, administrative law judge Blanca B. de la Torre issued a decision on June 26, 2014, finding that Mr. Sosbe is not disabled. The Appeals Council denied review of the ALJ's decision on February 8, 2016, rendering the ALJ's decision for the Commissioner final. Mr. Sosbe timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration. As provided by Fed. R. Civ. P. 25(d), she is substituted for Carolyn W. Colvin as the defendant.

Mr. Sosbe contends the Commissioner's decision must be reversed and remanded for two reasons. First, he argues that the ALJ erred at step three because she did not evaluate whether listing 12.05 was met or medically equaled. Second, he argues that the Appeals Council erred in its review of "new and material evidence," and remand should be ordered for the correction of that alleged error.

The court will first describe the legal framework for analyzing disability claims and the court's standard of review and then address Mr. Sosbe's specific assertions of error.

## Standard for Proving Disability

To prove disability, a claimant must show he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A) (DIB benefits). Mr. Sosbe is disabled if his impairments are of such severity that he is not able to perform the work he previously engaged in and, if based on his age, education, and work experience, he cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The Social Security Administration ("SSA") has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if he is, then he is not disabled. Step two asks whether the claimant's

impairments, singly or in combination, are severe; if they are not, then he is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then his residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform his past relevant work, then he is not disabled. The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on his age, work experience, and education (which are not considered at step four), and his RFC; if so, then he is not disabled.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work

exists in significant numbers in the national economy that the claimant can perform, given his age, education, work experience, and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

## Standard for Review of the ALJ's Decision

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands more than a scintilla of evidentiary support, but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for her decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in her decision, but she cannot ignore a line of evidence that undermines the conclusions she made, and she must trace the path of her reasoning and connect the evidence to her findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

## Analysis

### I. The ALJ's Sequential Findings

Mr. Sosbe was born in 1983, was 28 years old at the alleged onset of his disability in March 2012, and 30 years old at the time of the ALJ's decision. While

4

in high school, Mr. Sosbe worked part-time (six hours a day/four days a week) for about two years at a grocery store as a bagger and cart person. (R. 48). After high school, he had several other jobs. He worked full-time for about six months for a company doing light physical work. (R. 49). He later worked at a McDonalds fast food restaurant, usually 25-30 hours per week, as a cook. (R. 50-51).

While in high school, Mr. Sosbe mostly was placed in special education classes. He received a certificate of completion at graduation, which is not an academic credential. Mr. Sosbe began living in a group home for adult men in November 2013. The home is staffed 24 hours a day. Before that time, he had either been homeless or lived with friends. (R. 52). He had stayed with a girlfriend a couple nights per week but could not live with her because she lived in Section 8 housing. (R. 29).

At step one, the ALJ found that Mr. Sosbe had not engaged in substantial gainful activity since his alleged onset date. At step two, she identified the following severe impairments: "residuals of left hip arthroscopic surgery for labral tear repair, asthma, right inguinal hernia, borderline intellectual functioning, depression, and generalized anxiety disorder." (R. 21). She determined that Mr. Sosbe's Tourette's syndrome was not a severe impairment because although he was apparently diagnosed with this syndrome as a toddler, the medical evidence in the record did not document symptoms, or the continued use of medication treatment, for the period relevant to Mr. Sosbe's disability application. (R. 21-22).

At step three, the ALJ found no listings were met or medically equaled, having considered listing 3.03 (asthma), 1.02 (major dysfunction of a joint), and three mental health listings: 12.02 (organic mental disorders), 12.04 (affective disorders), and 12.06 (anxiety-related disorders). Ms. Sosbe does not raise any error in the ALJ's analysis of his physical impairments or her accommodation of those impairments in the RFC. He alleges error solely with respect to his mental health impairments.

In evaluating whether Mr. Sosbe's mental impairments were of such severity to meet or medically equal a listing, the ALJ analyzed both the B criteria and the C criteria of the listings she identified. For B criteria, she determined that Mr. Sosbe's mental impairments mildly restrict his activities of daily living and pose moderate difficulties in social functioning and in concentration, persistence, or pace. She also found he had not experienced any episodes of decompensation of extended duration. Because the mental impairments, under the ALJ's analysis, did not cause any "marked" limitations, the paragraph B criteria of the listings were not satisfied. The ALJ also found that the C criteria were not met. For two of the listings (12.02 and 12.04), the C criteria includes the presence of a medically documented history of an organic mental disorder (12.02) or affective disorder (12.04) of at least two years' duration that has caused "more than a minimal limitation of ability to do basic work activities" *and* there is a "current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement." (*See* R. 24).

6

In her RFC, the ALJ included various limitations to account for Mr. Sosbe's physical impairments, including limits on walking and standing to four hours per day, sitting to six hours per day, lifting and carrying to only a light level of exertion, and various postural and environmental restrictions. To accommodate Mr. Sosbe's mental impairments, the ALJ's RFC provides:

> The claimant is able to understand, remember, and carry out short, simple, repetitive instructions. He is able to sustain attention/concentration for 2-hour periods at a time and for 8-hours in the workday on short, simple, repetitive tasks. The claimant can use judgment in making work-related decisions commensurate with that type of work. The occupation should have a set routine and procedures, few changes during the workday, only occasional co-worker contact and supervision, and no contact with the public.

(R. 25). This RFC is consistent with the opinion of state agency physicians about the severity of Mr. Sosbe's mental impairments and their effect on his functioning. *See* R. 426-29.

With this RFC and based on the testimony of a vocational expert, the ALJ concluded that Mr. Sosbe is capable of performing his past relevant work as a hand packager, and was not disabled at step four. She also analyzed disability at step five and determined, also based on the VE's testimony, that Mr. Sosbe is capable of performing three jobs that exist in significant numbers in the relevant economy: plastics packager, housekeeper, and small products assembler. Thus, she found Mr. Sosbe not disabled at step five as well.

## II. Mr. Sosbe's Assertions of Error

As noted above, Mr. Sosbe's assertions of error concern both the ALJ's analysis and actions taken by the Appeals Council. He argues that the ALJ erred

7

by not analyzing whether his mental impairments met or medically equaled listing 12.05C or 12.05D. As to the Appeals Council, he contends that it failed properly to evaluate evidence he submitted to it with his appeal. The court addresses each matter in turn below.

**A. The ALJ's step three decision is supported by substantial evidence.**

Listing 12.05, as in effect at the time of the ALJ's decision,[2] describes a severity of intellectual disability that is presumptively disabling, so that if a claimant meets or medically equals all of the requirements of the listing, he is entitled to benefits without regard to any analysis under steps four or five, including the formulation of an RFC. *See Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002) (describing presumptive disability at step three). Listing 12.05C and 12.05D read as follows (using the terminology in effect at the time of the ALJ's decision):

> 12.05 **Mental retardation.** Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning manifested during the developmental period, *i.e.,* the evidence demonstrates or supports onset of the impairment before age 22.
>
> The requirement level of severity for this disorder is met when the requirements of A, B, C, or D are satisfied . . .
>
> C.  A valid verbal, performance, or full scale IQ score of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

---

[2]  The Social Security Administration has substantially revised the mental health listings effective January 2017. The revised listings are applied to claims that are adjudicated at the administrative level after January 17, 2017, but courts review final decisions using the rules that were in effect when the decisions were issued. *See* Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138-01 (Sept. 26, 2016).

D. A valid verbal, performance, or full scale IQ score of 60 through 70, resulting in [meeting the B criteria].

In her listing analysis and discussion of Mr. Sosbe's mental impairments and their effect on his functioning, the ALJ relied on and found persuasive the opinions of a state agency reviewing psychologist, Dr. Gange. (R. 23-24). Dr. Gange's opinions reflect the relevant listings supported by the record, and he gave a narrative about why mental retardation was not a listing supported by the record. (R. 428). Dr. Gange acknowledged evidence of an IQ score within the range of 12.05C and 12.05D, but found that the record evidence, including school records, are consistent with a learning disability for "verbally-mediated skills" rather than mental retardation. Dr. Gange determined that Mr. Sosbe's intellectual disability was properly analyzed under listing 12.02, as an organic mental disorder, rather than 12.05 for mental retardation. (R. 430). Dr. Gange also addressed facets of Mr. Sosbe's functioning, and opined that the record evidence did not support marked limitations in *any* of the B criteria or repeated episodes of decompensation.

The court is satisfied that the ALJ sufficiently articulated her decision regarding applicable listings and did not err by failing to specifically mention 12.05C or 12.05D. She acknowledged Mr. Sosbe's IQ score, discussed his functioning (including his hobbies of fixing bicycles, fishing, bowling, and playing video games), analyzed the B criteria of the mental health listings, and relied on expert medical opinion. The court can follow the path of the ALJ's reasoning and it is supported by substantial evidence. In light of the medical evidence, the ALJ's

failure to specifically mention listing 12.05 in her step three analysis is not a ground for remand here. *See Rice v. Barnhart,* 384 F.3d 363, 369-70 (7th Cir. 2004) (ALJ's failure explicitly to refer to a relevant listing does not alone require remand); *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004) (ALJ may rely on the opinions of state reviewing physicians regarding whether a listing was met or medically equaled).

The court now addresses Mr. Sosbe's assertion that the Commissioner's decision should be reversed and remanded because of actions of the Appeals Council.

**B. The court cannot find that the Appeals Council erred in its review.**

Mr. Sosbe argues that the Appeals Council erred "in its review of new and material evidence."

Mr. Sosbe submitted to the Appeals Council a legal memoranda and two pieces of evidence: (1) an October 28, 2014 letter written by Kerri Keck, a Care Coordinator at Centerstone, a mental health provider that Mr. Sosbe began treatment with in June 2013 (R. 490-498; initial evaluation by Centerstone) and (2) a May 7, 2014 letter written by Joshua F. Doyle, Mr. Sosbe's Rehabilitation Specialist with Centerstone. When Mr. Sosbe was first evaluated by Centerstone, he informed the clinician that he had been referred by his girlfriend who also receives care by Centerstone and with whom he had stayed a couple nights at a time. (R. 490). Centerstone owns and operates a group home—the Grant Street House— which, according to Ms. Keck's letter, "is a semi-independent shared housing

program for formerly homeless persons with disabilities." Dkt. 21-1. Mr. Sosbe began living at Grant Street House in November 2013.

Ms. Keck's letter confirms that Mr. Sosbe resides at the Grant Street House and states that there is a "live-in house monitor on site every evening who provides life skills training as well as occasional medication management as needed." (Dkt. 21-1). Mr. Doyle's letter states that he works with Mr. Sosbe on a regular basis (twice per week) with life skills training, budgeting, and communication skills, and that he arranged for Mr. Sosbe to obtain housing at Grant Street House. Mr. Doyle has also helped Mr. Sosbe to remember to take his medications, to keep his medical and other appointments, to maintain appropriate documentation for Medicaid, to budget his food stamps, communicate effectively with others, and to access resources in the community. Dkt. 14-6 at p. 88. Mr. Doyle stated too that Mr. Sosbe still requires daily instruction and supervision from staff at the group home, but his experience has improved his "ability to interact with others, learn how to care for a home, and for friendships." *Id.*

Mr. Sosbe argues that the Appeals Council "incorrectly determined that Mr. Doyle's letter did not provide a basis for changing the ALJ's decision" and incorrectly found that Ms. Keck's letter "is new information about a later time" than the date of the ALJ's decision issued June 26, 2014, and "does not affect the decision about whether you were disabled on or before June 26, 2014." Dkt. 14-2 at p. 3.[3]

---

[3] The Appeals Council's letter denying review of the ALJ's decision, even with the new evidence submitted by Mr. Sosbe, states that he needs to apply again for

The Commissioner argues that the court cannot find error in the Appeals Council's actions because even if the court were permitted to review the Appeal Council's decision about whether the evidence was new, material, and relates to a period on or before the ALJ's decision, it is clear that the Appeals Council did not err.[4] Mr. Sosbe did not file a reply brief, and thus did not contest the Commissioner's analysis.

The court agrees with the Commissioner that even if the court has the authority to review the Appeals Council's decisions about whether the evidence was new and material or only related to a later time period, the court cannot find error requiring remand.

Mr. Doyle's letter is clearly not "new." It is dated May 7, 2014**,** and *predates* the ALJ's administrative hearing. At the hearing, and at Mr. Sosbe's counsel's request, the ALJ agreed to keep the record open for 15 more days expressly to allow counsel to submit any updated information from Centerstone. (R. 69-70, 76).

---

disability in order for the Social Security Administration to consider whether he became disabled after June 26, 2014. Dkt. 14-2 at p. 3.

[4] Certain decisions by the Appeals Council in connection with its denials of review are subject to judicial review and some are not. A decision at step one of the Appeals Council's review process on whether newly-submitted evidence is new, material, and relevant to the adjudicated time period is reviewable, but a decision by the Appeals Council that the evidence meets those standards but nevertheless would not render the ALJ's decision contrary to the weight of the evidence is not reviewable. *See* Commissioner's explanation, which Mr. Sosbe does not contest, at Dkt. 24, pp. 6-7. *See also Brown v. Colvin,* 2015 WL 3886029 (S.D. Ind. June 22, 2015) (adopting Magistrate Judge Dinsmore's report and recommendation affirming Commissioner's decision that a claimant was not disabled, and which describes in detail the Appeals Council's review process and decisions that are reviewable by a court and those that are not).

Moreover, the contents of Mr. Doyle's letter are not materially different from the explanation Mr. Sosbe gave during the hearing about the training and support he receives at Grant Street House, which the ALJ described in her decision. (*See* R. 29, explaining that Mr. Sosbe gets assistance at Grant Street group home with life skills, community resources, and public benefits, after a period of homelessness). The Commissioner's reliance on *Sample v. Shalala,* 999 F.2d 1138, 1144 (7th Cir. 1993), for the proposition that evidence *based on information* that was part of the administrative record and available before the ALJ's decision is not new, is persuasive and unrebutted by Mr. Sosbe.

The court also cannot find error in the Appeals Council's decision denying review based on its finding that Ms. Keck's letter is not "new" because it relates to a time period after the ALJ's decision. It, in fact, does relate to a later time period because it addresses Mr. Sosbe's state of living in October 2014, four months after the ALJ's decision, and Mr. Sosbe does not even attempt to establish, or even ask for, a sentence six remand for the consideration of later evidence. Although Mr. Sosbe now complains that the Appeals Council's denial of review is unfair because it prevents him from obtaining an award of benefits as of the time he first moved to Grant Street House in November 2013, Mr. Sosbe never asked the ALJ to consider an amended onset date. He was represented by counsel and was expected to put on his best case for benefits.

In summary, the court does not find that the Appeals Council erred in denying review.

## **Conclusion**

For the foregoing reasons, the court AFFIRMS the Commissioner's decision that Daniel Lee Sosbe was not disabled between the date of his alleged onset of disability and the date of the ALJ's decision.

So ORDERED.

Date: 9/29/2017

*Debra McVicker Lynch*
Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record by email through the court's ECF system